UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA PACIFIC SOUTHWEST REGION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF ENERGY,<br><br>Defendant. | No. 2:13-cv-02204-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

Before the Court is Defendant U.S. Department of Energy's ("DOE") Motion for Summary Judgment. (ECF No. 19)[1]  For the following reasons, Defendant's Motion is GRANTED.[2]

///
///
///
///

---

[1] Plaintiff's "rebuttal" to Defendant's Reply, ECF No. 30, was not considered by the Court as rebuttals to replies are not permitted.  See E.D. Cal. Local R. 230).

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g); ECF No. 33.

## BACKGROUND

This dispute stems from a Freedom of Information Act ("FOIA") request by Plaintiff Laborers' International Union of North America Pacific Southwest Region ("LIUNA-PSW") made to DOE on December 7, 2012. LIUNA-PSW sought payroll information from a large-scale solar utility project, Desert Sunlight, to assess compliance with the Davis-Bacon Act. The Davis-Bacon Act is a federal law that requires contractors and subcontractors on federally funded projects to pay their laborers no less than the prevailing local wage. Because the project was funded in part with a DOE loan guarantee, Sunlight's owners were required to file certified payroll records with DOE.

On March 19, 2013, DOE provided LIUNA-PSW with the requested payroll records. However, LIUNA-PSW alleges that DOE improperly redacted the hours worked per worker per day, the total hours each worker worked per week, the deductions taken, the fringe benefits paid, and the total paid to each worker. The only unredacted information provided was each employee's work classification and the rate of pay. See ECF No. 19-4. LIUNA-PSW states that it needs the hours worked per day and per week, as well as the total amount paid, to determine if employees who worked more than eight hours per day or 40 hours per week were paid appropriate overtime wages. The DOE justified the redactions under two FOIA exemptions: (1) Exemption 4, 5 U.S.C. § 552(b)(4), which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential" from disclosure to the public; and (2) Exemption 6, 5 U.S.C. § 552(b)(6), which protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

On April 23, 2013, LIUNA-PSW challenged DOE's redactions by filing an appeal with the DOE's Office of Hearing and Appeals. The Office of Hearings and Appeals issued a decision and order sustaining the withholding of information under Exemption

4.[3]  In response to the decision by the Office of Hearings and Appeals, LIUNA-PSW filed this suit on October 22, 2013.  The DOE then moved for summary judgment.  ECF No. 19.

## STANDARD

Most cases brought pursuant to FOIA are resolved through summary judgment. Cooper Cameron Corp. v. U.S. Dep't of Labor, 280 F.3d 539, 543 (5th Cir. 2002). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." Miner v. CIA, 88 F.3d 796, 800 (9th Cir. 1996).

Review of an agency's response to a FOIA request is conducted *de novo*. 5 U.S.C. § 552(a)(3)(A).  Under FOIA, federal agencies are required to disclose documents upon request, unless those documents are exempted from disclosure by statute.  Willamette Indus., Inc. v. United States, 689 F.2d 865, 867 (9th Cir. 1982).  "The statute contains nine enumerated exemptions allowing the government to withhold documents or portions of documents."  Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 973 (9th Cir. 2009).

The agency responding to a request has the burden of sustaining the adequacy of its response by demonstrating that it did not improperly withhold records subject to disclosure under FOIA.  5 U.S.C. § 552(a)(3)(A); U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  The agency must provide a relatively detailed analysis justifying any withheld information, Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), and the justifications cannot be controverted by contrary evidence in the record or

---

[3] While the DOE's use of Exemption 6 was remanded, that is not of consequence here because all issues regarding Exemption 6 were resolved with stipulations.  ECF No. 23 at 3 n.2.

evidence of bad faith, <u>Hunt v. CIA</u>, 981 F.2d 1116, 1119 (9th Cir. 1992).

**ANALYSIS**

As all issues regarding Exemption 6 were resolved with stipulations (ECF No. 23 at 3 n.2), the Court's analysis is limited to DOE's use of Exemption 4 to withhold information from LIUNA-PSW.  In order to use Exemption 4, the agency must show that disclosure is likely "to cause substantial harm to the competitive position of the person from whom the information was obtained." <u>National Parks & Conservation Ass'n v. Morton</u>, 498 F.2d 765, 770 (D.C. Cir.1974).  The agency does not need to show actual competitive harm, just evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury. <u>C.G. Micro Corp. v. Def. Logistics Agency</u>, 33 F.3d 1109, 1113 (9th Cir. 1994). The Court must balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information.  <u>Id.</u> at 1115.

A common sense approach is applied when determining whether there is actual competition in the relevant market.  <u>Watkins v. U.S. Bureau of Customs and Border Protection</u>, 643 F.3d 1189, 1196 (9th Cir. 2011).  It is common sense that the market for federal contracts is competitive.  DOE has provided evidence of the razor-thin margins that separate successful bidders from their competitors in the bidding process (<u>see</u> Diller Decl., ECF No. 19-6, ¶ 8), and LIUNA-PSW does not dispute this point.  Accordingly, the Court must focus  on whether DOE has shown that releasing the requested information is likely to cause substantial competitive injury.

Substantial competitive harm occurs when disclosure would allow competitors to estimate and undercut a contractor's bid.  <u>G.C. Micro Corp.</u>, 33 F.3d at 1115 (citing <u>Gulf & Western Indus., Inc. v. United States</u>, 615 F.2d 527, 530 (D.C. Cir. 1979)).  The agency's burden can be satisfied by producing "government affidavits so long as the affiants are knowledgeable about the information sought and the affidavits are detailed

enough to allow the court to make an independent assessment of the government's claim." Lion Raisins v. U.S. Dep't of Agric., 354 F.3d 1072, 1079 (9th Cir. 2004). Courts accord the agency's declarations "substantial weight." Hunt, 981 F.2d at 119.

DOE contends that release of the information would cause substantial competitive harm to First Solar, the engineering, procurement and construction contractor selected for the Desert Sunlight Project. The potential competitive harm is detailed in two declarations from First Solar employees. See ECF Nos. 19-6 (Diller), 19-7 (Potsma). According to those declarations, labor costs are what determine a winning bid because other costs, such as materials, are usually standardized across all bidders. The concern is that "[l]abor cost can be derived by multiplying the wage rates for each craft by the number of hours each craft has worked on the project. If one bidder ("Bidder B") learns the number of hours each craft has worked on the project for another bidder ("Bidder A"), then Bidder B can use that information to determine Bidder A's labor cost. . . . Bidder B can then use that information to underbid Bidder A when competing for solar projects." Diller Decl., ECF No. 19-6, ¶ 7. In addition, DOE argues that First Solar's labor efficiency, the allocation of work between crafts, could be determined by the redacted information and knowledge of First Solar's labor efficiency could "deprive First Solar of its competitive advantage permanently." ECF No. 19-2 at 6.

LIUNA-PSW counters, essentially, that each solar project varies and that the payroll information from one project would not provide competitors with enough information to undercut First Solar in future bidding processes. Hulett Decl., ECF No. 23-5, ¶¶ 9-14. It is true that substantial competitive harm is less likely to be found when the information redacted provides insight into only one of several variables a competitor needs to gain an advantage. See G.C. Micro Corp., 33 F.3d at 1112-15. However, LIUNA-PSW has not provided sufficient evidence to convince the Court that such is the case here. LIUNA-PSW's declarations are from individuals with no experience with the bidding process for large-scale solar utility projects.[4] Those

---

[4] LIUNA-PSW offers declarations from two individuals to dispute DOE's claim of likely substantial

declarants cannot say, based on their personal knowledge, that labor costs and labor efficiency are not the distinguishing factors in the bidding process for large-scale solar utility projects.

DOE has the burden to establish that Exemption 4 applies, and it has met that burden. LIUNA-PSW's declarations from individuals who are unfamiliar with the bidding process on large scale solar utility projects are not enough to survive summary judgment.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close the case.

IT IS SO ORDERED.

Dated: January 15, 2015

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

competitive harm. Michael Hulett works in distributed generation, or rooftop solar, not on large scale solar-utility projects. ECF No. 23-5 at ¶ 6. Izaak Velez is a former superintendent in an unnamed industry. ECF No. 23-4 at ¶ 2.